[No. 47145–2.   En Banc.   December 31, 1980.]

MUTUAL OF ENUMCLAW INSURANCE COMPANY, *Petitioner,*
v. MAURA McGAHAN WISCOMB, ET AL,
*Respondents.*

*Murray, Dunham & Waitt,* by *Wayne Murray* and *Simonarson, Visser, Johnson, Zender & Brandt,* by *Peter Jay Visser,* for petitioner.

*Faith Enyeart,* for respondent.

WILLIAMS, J.—In this case we are asked to decide whether a "family or household exclusion clause" in an automobile liability insurance policy is void as against public policy. The Court of Appeals held that such a clause is void for that reason, and we affirm.

The facts are not in dispute. Respondent Maura McGahan Wiscomb was seriously injured in a collision between the motorcycle that she was driving and an automobile driven by her husband. Both vehicles were insured by petitioner Mutual of Enumclaw Insurance Company, which provided both liability and uninsured motorist coverage.

Maura Wiscomb commenced a lawsuit against her husband, alleging that she suffered personal injuries as a result of his negligence. Her husband tendered the defense to petitioner, which brought a declaratory judgment action to determine the question of insurance coverage. Petitioner contended that it was relieved of its obligation under the family or household exclusion clause of the insurance policy, which stated:

This policy does not apply . . .

. . .

(1) to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured.

Clerk's Papers, at 43.

The trial court ruled that the exclusionary clause relieved petitioner of any obligation to defend the action or pay damages. Petitioner appealed to the Court of Appeals, which reversed, declaring the exclusionary clause to be void as against public policy. *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 25 Wn. App. 841, 611 P.2d 1304 (1980).

The household or family exclusion clause is almost universally found in automobile insurance policies. *United Pac. Ins. Co. v. McCarthy,* 15 Wn. App. 70, 546 P.2d 1226 (1976). Indeed, petitioner's counsel informed the court at oral argument that a policy without such a clause cannot be purchased in Washington at the present time. Moreover, such clauses have been sanctioned, if not expressly approved, twice in recent years by the Court of Appeals: *United Pac. Ins. Co. v. McCarthy, supra*; and *State Farm Mut. Auto. Ins. Co. v. Phillips,* 2 Wn. App. 169, 467 P.2d 189, 46 A.L.R.3d 1013 (1970).

The general rule, which appears supported by the weight of authority, is that provisions excluding from coverage members of the insured's family or household are valid and effective to protect the insurer against claims for injuries to persons who fall within those classes. Annot., *Validity, Construction, and Application of Provision of Automobile Liability Policy Excluding From Coverage Injury or Death of Member of Family or Household of Insured,* 46 A.L.R.3d 1024, 1029 (1972). There are several rationales supporting this view. In *Phillips,* the Court of Appeals stated that the household or family exclusion clause was intended not only to protect insurers from collusion which might possibly arise in intrafamily suits, but also to protect insurers from the natural tendency of the insured to strengthen or enlarge the case against oneself when it involves members of his or her household and family. This view rested on the premise that there is a natural disposition to favor those in

one's own family or household. *Phillips,* at 177. Similar reasoning is given in numerous cases from other jurisdictions. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Thompson,* 372 F.2d 256 (9th Cir. 1967); *Tomlyanovich v. Tomlyanovich,* 239 Minn. 250, 58 N.W.2d 855 (1953).

The family or household exclusion clause has also been upheld because of a state policy of supporting interspousal immunity. *State Farm Mut. Auto. Ins. Co. v. Leary,* 168 Mont. 482, 544 P.2d 444 (1975). Conversely, where a statute provides that a liability insurance company may not exclude from its coverage liability for injuries to persons related by blood or marriage to the insured, the exclusionary provision is invalid. *Haines v. Mid–Century Ins. Co.,* 47 Wis. 2d 442, 177 N.W.2d 328 (1970); *Urhammer v. Olson,* 39 Wis. 2d 447, 159 N.W.2d 688 (1968).

Before considering directly the question of the family exclusion clause, the Court of Appeals in the present case carefully traced the common law development of interspousal immunity and its eventual abrogation by this court in *Freehe v. Freehe,* 81 Wn.2d 183, 500 P.2d 771 (1972). In *Freehe,* where we were directly asked to abolish the doctrine of interspousal immunity, the court considered all of the historical reasons for the common law doctrine. Among the traditional supporting rationales was the desirability of discouraging collusion and fraud where one or both spouses carries liability insurance. *Freehe,* at 188–89. In dismissing this rationale, the court stated:

> The courts may and should take cognizance of fraud and collusion when found to exist in a particular case. However, the fact that there may be greater opportunity for fraud or collusion in one class of cases than another does not warrant courts of law in closing the door to all cases of that class. Courts must depend upon the efficacy of the judicial processes to ferret out the meritorious from the fraudulent in particular cases.

*Freehe,* at 189, quoting *Borst v. Borst,* 41 Wn.2d 642, 653, 251 P.2d 149 (1952). Clearly, as the Court of Appeals con-

cluded, one spouse may sue the other for negligence after *Freehe.*

Two years before the *Freehe* decision, the Court of Appeals upheld the family exclusion clause in insurance contracts in the *Phillips* case, resting its decision on the fraud or collusion rationale summarized above. Since this court, in *Freehe,* has since decided that the fraud or collusion rationale does not support interspousal immunity, the only remaining question is whether this or any other rationale is sufficient to uphold an exclusionary clause in private insurance contracts.

We have never held as a general proposition that exclusionary clauses in liability insurance policies are void as against public policy. Indeed, the Washington courts have upheld other exclusionary clauses in insurance policies against just such a charge. In *St. Paul Fire & Marine Ins. Co. v. Circle Bar J Boys' Ranch, Inc.,* 1 Wn. App. 377, 461 P.2d 567 (1969), for example, the court approved as valid an endorsement in a policy excluding coverage for any claim arising from accidents which occur while any automobile is being driven by any person under 25 years of age. In *Royse v. Boldt,* 80 Wn.2d 44, 491 P.2d 644 (1971), the policy excluded coverage for any accident occurring while the insured automobile was being operated by any driver other than the named insured, a resident of his household, or a driver specifically named in the policy. Again, we refused to declare the restriction void on public policy grounds. Finally, in *Barkwill v. Englen,* 57 Wn.2d 545, 358 P.2d 317 (1961), the insurance policy contained a "student and servicemen's endorsement" which provided that the insurance did not apply to the use of any automobile while being driven or operated by any person other than the named insured or a member of his family. Appellants urged the court to require that drivers be financially responsible to those they injure while operating motor vehicles, citing a rule adopted by a California court. This court replied:

It is not the function of the judiciary of this state to determine public policy as it relates to this subject. That function rests exclusively with the legislative branch of our government. Our legislature has not enacted a compulsory financial responsibility law applicable to the owners and operators of motor vehicles. Appellants' request for such legislation and the pronouncement of public policy should be addressed to the legislature.

*Barkwill,* at 548.

Thus, it can be seen that our courts have approved several kinds of exclusionary clauses in automobile liability insurance policies.

In 1963, after *Barkwill,* the Washington legislature enacted a financial responsibility law, RCW 46.29. Under the provisions of the statute, the driver after an injury accident must deposit security, unless he or she has an "automobile liability policy." RCW 46.29.060, .080. In addition, the driver involved in such an accident must furnish proof of financial responsibility for the future. RCW 46.29-.260, .420. Such proof may be made by a showing of a motor vehicle liability policy. RCW 46.29.450, .460. If a liability policy is furnished as proof, the statute requires that the policy "*[s]hall* insure the person named therein and any other person, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured, against loss from the *liability imposed by law* for damages . . ." (Italics ours.) RCW 46.29.490(2)(b).

■ This court has explained the purpose of the financial responsibility law as follows:

The sections of our statutes involved here . . . are directly intended for the benefit of owners and drivers of motor vehicles as a means of forestalling suspension of the license of the driver and of the registration of the vehicle and, more fundamentally, designed to give monetary protection to that ever changing and tragically large group of persons who, while lawfully using the highways themselves, suffer serious injury through the negligent use of those highways by others.

*LaPoint v. Richards,* 66 Wn.2d 585, 590, 403 P.2d 889 (1965).

If a fundamental purpose of the financial responsibility law is to give monetary protection to those people who suffer serious injury through the negligent use of highways by others, then it is difficult to see how an insured with a liability policy which contains a family exclusion clause could furnish the required proof that he is financially responsible in any circumstance where a family member was injured. Although financial responsibility may be shown by means other than an automobile liability policy, *see* RCW 46.29.450, .460, it seems plain as a practical matter that the only way most people can show financial responsibility is by an insurance policy. Most people do not have resources which allow them to go uninsured.

Because the public policy as expressed in the financial responsibility law appears inconsistent with the family or household exclusionary clause, respondent contends the clause should be struck as void against public policy. Petitioner argues correctly, however, that a similar argument was tendered to the Court of Appeals in *United Pac. Ins. Co. v. McCarthy,* 15 Wn. App. 70, 546 P.2d 1226 (1976). In that case the appellant argued that if the tort–feasor (his stepfather) was not liable for appellant's injuries under the family exclusionary clause, then the appellant stepson, concededly an "insured" under the policy, should be able to collect under the uninsured motorist provision of the policy. Without analysis, the court stated:

> The fact that the policy excluded coverage for a relative who resided in the McCarthy household does not disqualify the policy for compliance with RCW 48.22.030 [uninsured motorist provisions]. Household or family exclusionary clauses are customary in automobile policies and their propriety is judicially sanctioned.

*McCarthy,* at 74. A careful reading of *McCarthy* reveals that, while the court commented in passing that household or family exclusion clauses are customary and judicially sanctioned, the actual holding was only that exclusion of a family member under that clause would not render him eligible to proceed under uninsured motorist coverage. Unlike

the *Borst* and *Freehe* decisions, the opinion did not discuss the public policy grounds which relate to the family or household exclusion clauses in automobile insurance liability policies.

Courts in several other jurisdictions have accepted the argument that family exclusionary clauses in automobile liability insurance policies are void as against public policy. In Michigan, for example, the no–fault insurance statutes permit an insurance policy to exclude coverage when a vehicle is operated by a named person, but no provision addresses the problem of coverage for injuries to a person who was not operating the vehicle, a fact pattern identical to this case. Mich. Stat. Ann. § 24.13009(2). When presented with the question whether the exclusionary clause as applied to a spouse's personal injuries was void, the Michigan Court of Appeals looked to the legislative intent embodied in the no–fault insurance act and found the statute required a liability policy to insure the named insured against loss "'from liability *imposed by law* for damages arising out of the ownership, maintenance or use of such motor vehicle'." *Allstate Ins. Co. v. DeFrain*, 81 Mich. App. 503, 507, 265 N.W.2d 392 (1978).

In the present case, the Court of Appeals concluded that the policy embodied in the financial responsibility law of providing protection to persons injured by the negligence of others driving automobiles renders invalid the family and household exclusion clause. In fact, it seems plain to us that the exclusionary clauses in question have the effect of excluding one large group of persons from the possibility of being insured against liability to spouses and another group from protection against injury caused by their spouses, a result which does appear to be inconsistent with the policy expressed in the financial responsibility act, RCW 46.29. Moreover, the court found that rationale of preventing fraud and collusion, which was rejected in *Freehe* and *Borst v. Borst*, 41 Wn.2d 642, 251 P.2d 149 (1952), is inadequate to support the exclusion. In *Freehe*, the court rejected the notion "that courts are so ineffectual and the jury system is

so imperfect that fraudulent claims cannot be distinguished from the legitimate.'" *Freehe v. Freehe,* 81 Wn.2d 183, 189, 500 P.2d 771 (1972), quoting *Goode v. Martinis,* 58 Wn.2d 229, 361 P.2d 941 (1961). That reasoning seems equally applicable to this issue.

Petitioner asserts, however, that insurance contracts have traditionally been held to be private contracts between parties. *Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.,* 50 Wn.2d 443, 313 P.2d 347 (1957). As a private contractor, the insurer is ordinarily permitted to limit its liability unless inconsistent with public policy and statute. *Trinity Universal Ins. Co. v. Willrich,* 13 Wn.2d 263, 124 P.2d 950, 142 A.L.R. 1 (1942). Where provisions in insurance policies are inconsistent with public policy, Washington courts have not hesitated to strike them. *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 494 P.2d 479 (1972). *See also Baker v. Seattle,* 79 Wn.2d 198, 200–01, 484 P.2d 405 (1971); *Trinity Universal Ins. Co. v. Willrich, supra.*[1]

Petitioner also contended at oral argument that the consequence of striking down the household or family exclusion clause would be higher premiums for all policyholders. However, neither counsel nor the record furnishes the court with any data which supports petitioner's contention that insurance companies must pay out significantly higher benefits in those states where exclusionary clauses have been held invalid.

Since petitioner has not demonstrated the efficacy of the reasons supporting the family exclusion clauses, and since such clauses may make it impossible for many drivers to demonstrate financial responsibility in accordance with the

---

[1]Moreover, we express reservations that this "private contract" theory is a realistic one in the context of automobile liability insurance at the present time. Counsel for petitioner, for example, stated at oral argument that a purchaser of an automobile liability insurance policy in Washington today would be unable to bargain successfully to avoid a family or household exclusion clause in his policy. Thus, petitioner's argument that the sanctity of private contracts should be protected is unpersuasive in this particular context.

statute, we hold that the family and household exclusion clause is void as against public policy. This conclusion in no way affects other kinds of exclusions in automobile liability insurance policies. Exclusions rest on diverse grounds, and each exclusion must be analyzed in terms of the policies which are said to support it. In addition, as the Court of Appeals noted:

> Our holding that the family or household exclusion clause is void as against public policy does not leave insurers defenseless against fraudulent or collusive claims. The established methods of detecting and discouraging fraud can be applied to intrafamily claims without the effect of denying coverage to bona fide claimants. *Borst v. Borst, supra.* If an insurer demonstrates fraud or collusion in a particular claim, the "cooperation clause" of the insurance policy would relieve the insurer of liability under the policy. 14 G. Couch, *Cyclopedia of Insurance Law* § 51:170 (2d ed. 1965).

*Mutual of Enumclaw Ins. Co. v. Wiscomb,* 25 Wn. App. 841, 848–49, 611 P.2d 1304 (1980).

The decision of the Court of Appeals is affirmed.

UTTER, C.J., ROSELLINI and HOROWITZ, JJ., and HAMILTON, J. Pro Tem., concur.

STAFFORD, J. (concurring in the result)—I concur only in the *result* of the majority for two reasons: (1) First, the husband and wife were driving *separate* vehicles at the time of the accident, yet the majority does not distinguish between this and the more common situation where family members are riding in the same vehicle. I would limit the result herein solely to the facts at hand.

(2) It is not the family exclusion clause per se which should be held void as against public policy. Rather, it is the inability of an insured to contractually avoid such an exclusionary clause that should be deemed violative of public policy. As mentioned in footnote 1 of the majority opinion, automobile liability insurance policies without a family exclusion clause are not readily available in this

state. If insurance companies gave policy holders an option to have extended coverage with no family exclusionary clause, it should not be violative of public policy to allow an insured to opt out of that coverage. *Cf.* RCW 48.22.030 (allowing insured to reject uninsured motor vehicle coverage). Thus, if the majority opinion is to be read as absolutely prohibiting such family exclusion clauses, it goes too far. Parties should be free to contract for any risk they choose, adjusting the premium to the risks assumed. *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 335, 494 P.2d 479 (1972) (Neill, J., concurring).

DOLLIVER, J. (dissenting)—The majority ignores a carefully considered legislative scheme and without the slightest statutory warrant decides that in the event of an interspousal tort only liability insurance will meet the requirements of the financial responsibility act, RCW 46.29. While the financial responsibility act was "designed to give *monetary protection* to that ever changing and tragically large group of persons who, while lawfully using the highways themselves, suffer serious injury through the negligent use of those highways by others" (italics mine) (*LaPoint v. Richards,* 66 Wn.2d 585, 590, 403 P.2d 889 (1965)), it specifically was not designed to require that the "monetary protection" be in the form of automobile liability insurance.

This authorization by the legislature of a variety of kinds of "monetary protection" after an accident has occurred is spelled out in great detail in RCW 46.29.060–.240. Following an accident which results in the "bodily injury or death of any person or damage to the property of any one person of three hundred dollars or more" (RCW 46.29.060), the driver or the owner of the motor vehicle must (a) deposit security with the Department of Licensing (RCW 46.29.070, .100, .110); or (b) come under one of several exemptions listed in RCW 46.29.080 which exemptions include an automobile liability policy or an automobile liability bond or a qualified self–insurer.

This policy decision on the part of the legislature that a multiplicity of methods for showing financial responsibility are available to the owner and driver of a motor vehicle is extended into the portion of the act dealing with proof of financial responsibility for the future, RCW 46.29.250–.600.

If it had been the determination of the legislature that financial responsibility could be shown only by liability insurance, then I could agree the public policy expressed in the financial responsibility act is inconsistent with a family or household exclusionary clause and that the clause should be stricken as void against public policy. To do so, however, with the statute as it is would be a flagrant example of judicial legislation.

If, as is held today by the majority, it were in fact the intent of the legislature to require a negligent spouse to carry insurance where an interspousal tort is claimed in an automobile accident, or to require that all persons injured in a motor vehicle accident were entitled to compensation from an insurance carrier, or to hold that family or household exclusion clauses were invalid, it is logical to believe that at least sometime during the past 8 years—since *Freehe v. Freehe,* 81 Wn.2d 183, 500 P.2d 771 (1972), which overturned the doctrine of interspousal tort immunity—this intention would have been manifested by the enactment of legislation. It was not.

It may well be as the majority suggests that some of the choices given by the legislature are more difficult than others or that since liability insurance is the most practical way to fulfill the requirements of RCW 46.29, it ought to be the only way. It may also be that the failure of the legislature to recognize this viewpoint does not comport with the sense of what this court believes should be the policy in this state. But as long as the choices have been given, then any change to require that insurance always be available to meet financial responsibility where there is interspousal liability should be by a vote of members of the legislature and not by a vote of the members of this court.

I dissent.

BRACHTENBACH and HICKS, JJ., concur with DOLLIVER, J.

Reconsideration granted March 11, 1981.